**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-6122**

───────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

     v.

YONATHAN MELAKU,

                    Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:12−cr−00027−RDA−1)

───────────

Argued: March 8, 2022                            Decided: July 25, 2022

Amended: July 27, 2022

───────────

Before MOTZ and DIAZ, Circuit Judges, and KEENAN, Senior Circuit Judge.

───────────

Reversed and remanded with instructions by published opinion. Senior Judge Keenan wrote the majority opinion, in which Judge Motz joined. Judge Diaz wrote an opinion dissenting in part.

───────────

**ARGUED:** Jeremy Brian Gordon, JEREMY GORDON, PLLC, Mansfield, Texas, for Appellant. Aidan Taft Grano-Mickelsen, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Jessica D. Aber, United States Attorney, Richmond, Virginia, Daniel T. Young, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia.

───────────

BARBARA MILANO KEENAN, Senior Circuit Judge:

In this appeal, we consider whether a felony conviction under 18 U.S.C. § 1361 for willfully injuring or committing depredation against government property, with damage exceeding $1,000, qualifies as a predicate crime of violence under 18 U.S.C. § 924(c). We conclude that it does not, because this property offense can be committed in a non-violent manner without "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Because the district court erred in reaching a contrary conclusion, we reverse the court's judgment and remand.

I.

In 2012, Yonathan Melaku pleaded guilty to and was convicted of three felony offenses: (1) willfully injuring government property causing damage exceeding $1,000, in violation of 18 U.S.C. § 1361; (2) using, carrying, and discharging a firearm during a crime of violence, namely, the Section 1361 offense, in violation of 18 U.S.C. § 924(c); and (3) attempted injury to veterans' memorials, in violation of 18 U.S.C. § 1369.[1] The district court sentenced Melaku to a term of 300 months' imprisonment, which included a consecutive 120-month sentence for his conviction under Section 924(c). Melaku did not file a direct appeal from the district court's judgment.

---

[1] The dissent describes the dangerous conduct underlying Melaku's convictions. Dissent Op. 18. However, as explained below, we must apply the categorical approach to convictions under Section 924(c) and, thus, we are constrained to decide this question of law without consideration of Melaku's actual conduct. *See United States v. Davis*, 139 S. Ct. 2319, 2327-33 (2019); *United States v. Mathis*, 932 F.3d 242, 264 (4th Cir. 2019).

2

In 2016, Melaku filed a motion under 28 U.S.C. § 2255 to vacate his Section 924(c) conviction, arguing that the felony offense set forth in Section 1361 did not qualify as a predicate crime of violence.[2]  Section 1361 provides:

> *Whoever willfully injures or commits any depredation against any property of the United States*, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished as follows:
>
>> *If the damage or attempted damage to such property exceeds the sum of $1,000*, by a fine under this title or imprisonment for not more than ten years, or both; if the damage or attempted damage to such property does not exceed the sum of $1,000, by a fine under this title or by imprisonment for not more than one year, or both.[3]

18 U.S.C. § 1361 (emphasis added).

---

[2] In his motion filed in 2016, Melaku challenged his Section 924(c) conviction based on the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591, 606 (2015) (striking down the "residual clause" in 18 U.S.C. § 924(e)(2)(b)(ii) as unconstitutionally vague).  Melaku argued that after *Johnson*, the similarly worded residual clause in Section 924(c)(3)(B) also was void for vagueness, and that an offense under Section 1361 is not categorically a crime of violence under the force clause in Section 924(c)(3)(A).  Although Melaku filed his motion within one year of *Johnson*, the district court determined that *Johnson* did not apply and denied his motion as untimely without reaching the merits of Melaku's claims.  On appeal, the government waived reliance on the statute of limitations, because the Supreme Court had invalidated the residual clause of Section 924(c)(3)(B) in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).  We granted a certificate of appealability, vacated the district court's judgment, and remanded the case to the district court for further proceedings.  *United States v. Melaku*, 799 F. App'x 203, 204 (4th Cir. 2020) (No. 17-7397) (unpublished).  This appeal follows the district court's resolution of the motion on remand.

[3] Because a predicate crime of violence under Section 924(c) must be a felony and Melaku was convicted of a felony offense under Section 1361, we do not address the misdemeanor offense in Section 1361 of willfully injuring government property causing damage in an amount not greater than $1,000.

3

The district court held that the disjunctive language in the first clause of Section 1361 sets forth two versions of a felony offense, namely, willfully injuring government property *or* committing depredation against government property. Observing that Melaku was charged and convicted under the prong of willfully injuring government property, the court concluded that commission of this crime required the use of violent, physical force because it involved the "intentional causation of injury" to property. Accordingly, the court held that Melaku's conviction under Section 1361 qualified as a predicate offense for his Section 924(c) conviction. Based on this conclusion, the district court denied Melaku's motion to vacate his Section 924(c) conviction. We later granted Melaku a certificate of appealability in accordance with 28 U.S.C. § 2253(c).

## II.

We review de novo the district court's legal conclusions underlying its denial of relief under Section 2255. *United States v. Jones*, 914 F.3d 893, 899 (4th Cir. 2019). Our de novo review addresses the question of law whether Melaku's conviction under Section 1361 qualifies as a predicate crime of violence for his Section 924(c) conviction. *See United States v. Mathis*, 932 F.3d 242, 263 (4th Cir. 2019).

### A.

Melaku argues that the district court erred in concluding that Section 1361 qualifies as a crime of violence under the definition of that term in Section 924(c)(3)(A), which requires the crime to have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." He asserts that Section 1361 sets

4

forth a single felony offense that prohibits a range of conduct, some of which is not violent. Thus, Melaku argues that the offense does not qualify categorically as a predicate offense for his conviction under Section 924(c) for using or carrying a firearm during a crime of violence.

The government disagrees, relying on the district court's conclusion that Section 1361 sets forth two versions of the felony offense. Alternatively, the government maintains that even if Section 1361 establishes a single felony offense, that offense categorically requires as an element the use, attempted use, or threatened use of physical force against the property of another, within the meaning of Section 924(c)(3)(A). Thus, the government maintains that willfully injuring government property causing damage of more than $1,000 necessarily requires the use of physical force. We disagree with the government's arguments and address them in turn.

B.

In deciding whether an "alternatively phrased statute" qualifies as a "crime of violence," we first consider whether it defines a single offense that can be committed by different means, or includes multiple versions of a crime defined by alternative elements. *Mathis v. United States*, 579 U.S. 500, 517 (2016); *Omargharib v. Holder*, 775 F.3d 192, 198-99 (4th Cir. 2014); *United States v. Allred*, 942 F.3d 641, 649 (4th Cir. 2019). Only then can we answer whether the predicate offense, including the least serious of the felonious acts prohibited under the statute, qualifies as a crime of violence. *United States v. Drummond*, 925 F.3d 681, 689 (4th Cir. 2019). In considering whether a statute sets forth alternative elements or alternative means of commission, we can review the statutory

5

text, model jury instruction language regarding the elements of the crime, and how the crime historically has been charged. *Allred*, 942 F.3d at 649-51.

We conclude that Section 1361 defines a single felony offense. The statute's plain language provides that the offense may be committed by willfully injuring *or* committing depredation against government property. The "mere use of the disjunctive 'or' in the definition of a crime does not automatically render it divisible," because the alternatives may be means of commission, rather than alternative elements that must be decided upon by a fact finder. *Omargharib*, 775 F.3d at 194; *Allred*, 942 F.3d at 648-49. Therefore, in reviewing disjunctive statutory language, we focus on whether the nature of the conduct described in each of the statutory phrases is "radically distinct," which could indicate that the statute may contain alternative elements. *See Allred*, 942 F.3d at 650 (citation omitted) (concluding that causing bodily injury differs "significantly" from damaging tangible property such that 18 U.S.C. § 1513(b)(1) prohibiting retaliation against a witness is divisible).

In the present case, the plain text of the statute requires as an element damage or attempted damage to government property. 18 U.S.C. § 1361. The conduct of willfully injuring property and the conduct of committing depredation against property, as used in Section 1361, are not so dissimilar as to establish distinct crimes, but simply describe different means by which such damage or attempted damage to government property may be accomplished. *See Allred*, 942 F.3d at 650.

Two of our sister circuits, in addressing Section 1361, also have interpreted the terms "willfully injures" or "commits any depredation against," as a single element of

willfully causing damage to government property. *See United States v. Krause*, 914 F.3d 1122, 1128 (8th Cir. 2019) (stating statutory elements as (1) willful conduct by defendant to (2) damage property (3) belonging to government); *United States v. Seaman*, 18 F.3d 649, 650 (9th Cir. 1994) (stating that statutory elements require that defendant (1) willfully injured or committed a depredation (2) against property (3) of the government, and (4) the value exceeds the amount specified in the statute). This understanding likewise is consistent with federal model jury instructions that define a Section 1361 felony offense as having four elements: (1) the defendant "damaged (or destroyed)" (2) government property, (3) willfully, (4) causing damage greater than $1,000. 2 Leonard B. Sand, et al., *Modern Federal Jury Instructions (Criminal)* ch. 44A-2 (2021); *see also id.* ch. 44A-4 (explaining in the commentary that "courts routinely refer" to Section 1361 "as involving 'damage' to government property," without reference to "depredation," which "is unlikely to be in the vocabulary of the average juror"). Therefore, we conclude that the felony offense defined in Section 1361 is not divisible, and that the district court erred in concluding otherwise.

## C.

Having determined that Section 1361 defines a single felony offense, we turn to consider whether Melaku's conviction under the statute qualifies as a predicate crime of violence for his Section 924(c) conviction. Under Section 924(c)(3)(A), a "crime of violence" is defined in the statute's applicable "force clause" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). The categorical

7

approach requires us to determine whether the least culpable felonious conduct under Section 1361, a crime against property, meets this definition of a "crime of violence." *Drummond*, 925 F.3d at 689.  Notably, we consider only the elements of the offense in question without regard to an individual's conduct in committing the crime.  *Mathis*, 932 F.3d at 264.

The Supreme Court has not addressed the phrase "physical force against the . . . *property of another*" as used in Section 924(c)(3)(A) (emphasis added), the portion of the force clause relevant to the present appeal.  However, the Court has defined "physical force *against the person* of another" in the context of the similar, but not identical, force clause in 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added), the provision defining whether a defendant's prior offenses render him an "armed career criminal" subject to an enhanced sentence.  *Johnson v. United States*, 559 U.S. 133, 135 (2010).

In *Johnson*, the Court considered whether the defendant's predicate offense of battery under Florida law, which typically is charged as a misdemeanor offense but had been enhanced to a felony based on the defendant's prior conviction, qualified as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the ACCA).  559 U.S. at 135-36.  The Court held that "the phrase 'physical force' means *violent* force – that is, force capable of causing physical pain or injury to another person."  *Id.* at 140.  The Court observed that because a predicate offense must qualify as a "*violent* felony," that term requires a "substantial degree of force."  *Id.*  Excluded from this category of violent force, however, is the "nominal contact" necessary to commit "misdemeanor battery," which can be committed by "the slightest offensive touching."  *Id.* at 138-42.  Thus, the Court in

8

*Johnson* concluded that the defendant's prior offense of felony battery under Florida law did not qualify as a predicate violent felony under Section 924(e)(2)(B)(i). *Id.* at 135, 145.

Nine years after issuing *Johnson*, the Supreme Court revisited the definition of "physical force" as used in the ACCA force clause to determine whether the offense of robbery under Florida law constituted a "violent felony." *Stokeling v. United States*, 139 S. Ct. 544, 548-49 (2019). The Court held that even though Florida law required only the force necessary to overcome a victim's resistance, such force nevertheless is "'violent' in the sense contemplated" by the Court in *Johnson*, because overpowering even a weak-willed victim "necessarily involves a physical confrontation and struggle." *Id.* at 553. Contrasting the force used in robbery offenses with the "nominal contact" underlying misdemeanor battery, the Court explained that misdemeanor battery is rendered unlawful simply by its unwanted nature and does not encompass use of the force "capable of causing physical pain or injury" necessary to qualify as a "violent felony." *Id.* (discussing and quoting *Johnson*, 559 U.S. at 139-40).

Focusing on *Johnson*'s use of the word "capable," the Court explained that its definition of physical force is concerned with only the potential that the force used could cause pain or injury, rather than the likelihood that it will. *Id.* at 554. Thus, the degree of force needed to satisfy the ACCA force clause need not be "substantial," nor must the altercation between the offender and the victim result in any injury or pain. *Id.* at 553. Rather, a "physical contest" between two individuals over the possession of property "is itself 'capable of causing physical pain or injury.'" *Id.* (quoting *Johnson*, 559 U.S. at 140).

9

Guided by the Supreme Court's analyses in *Johnson* and *Stokeling* interpreting the ACCA force clause, the Tenth Circuit has considered the meaning of "physical force against . . . property of another" in analyzing whether a predicate property crime qualifies as a crime of violence under the force clause at issue here. *United States v. Bowen*, 936 F.3d 1091, 1106-08 (10th Cir. 2019). In *Bowen*, the Tenth Circuit held that the crime of witness retaliation under 18 U.S.C. § 1513(b) did not categorically require the use of physical force against property necessary to qualify as a "crime of violence" under Section 924(c)(3)(A). *Id.* at 1102, 1106-08. Under Section 1513(b), an individual can commit witness retaliation by causing bodily injury to another or by damaging property of another. 18 U.S.C. § 1513(b). The Tenth Circuit assumed without deciding that the statute was indivisible, 936 F.3d at 1102 n.5, and concluded that the least culpable means of committing witness retaliation, by damaging property, encompassed non-violent conduct, *id.* at 1107-08.

Critical to its analysis, the Tenth Circuit explained that "we cannot forget that we ultimately are determining the meaning of the term 'crime of violence' . . . [which] suggests a category of violent, active crimes." *Id.* at 1102 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)). Unlike robbery offenses, which are violent crimes involving the intimidation of a person, crimes against property do not require such personal intimidation and can be committed outside the presence of others. *See id.* at 1107.

To illustrate this distinction, the Tenth Circuit provided an example of a violation of Section 1513(b) that did not involve the use, attempted use, or threatened use of violent, physical force against property, namely, a conviction for witness retaliation based on a

10

threat to spray-paint a witness's car. *Id.* at 1104, 1107-08 (citing *United States v. Edwards*, 321 F. App'x 481 (6th Cir. 2009) (unpublished)).  The court reasoned that "the mere fact" that an intentional act can cause damage to property does not require the use of "violent force" against that property. *Id.* at 1107-08.

We agree with the Tenth Circuit.  We decline to hold that the language in Section 924(c)(3)(A) regarding the use of "physical force" against the "property of another" encompasses all felonious injury to property under Section 1361.  Were we to do so, we would be reading out of the statute Congress's directive that such qualifying predicate offenses must be "crime[s] of violence." 18 U.S.C. § 924(c)(1)(A).  The amount of damage to property, while defining felonious conduct under Section 1361, does not necessarily correlate with the type of the force employed.

We cannot ignore that "the behavior typically underlying the causation of bodily injury 'differs [] significantly' from that underlying damage to property." *Allred*, 942 F.3d at 650 (citation omitted) (discussing the statutory language in 18 U.S.C. § 1513(b)). Conduct that can cause bodily injury, or threaten "bodily integrity and safety," is materially different in kind from conduct directed only at "damag[ing] physical possessions." *Id.*  In fact, conduct that merely causes damage to the property of another may not pose any danger at all to persons not present when the damage occurs.  Accordingly, the phrase "property of another" does not fit well analytically into the *Johnson* and *Stokeling* templates for determining the use of "physical force against the person of another." *Compare* 18 U.S.C. § 924(c)(3)(A), *with* 924(e)(2)(B)(i).

11

At least some crimes involving damage to property are wholly dissimilar from crimes involving the use, attempted use, or threatened use of violent, physical force against a person. For example, and relevant to the present case, in *United States v. Carlson*, 2011 WL 13141452, at *1 (D. Idaho Sept. 15, 2011), three defendants were charged with violating Section 1361 for spraying paint on the face of a rock on land belonging to the federal government. The fact that this trespass resulted in a cost to repair government property did not transform the unlawful act of intentional vandalism into a "violent, active crime." *Leocal*, 543 U.S. at 11.

We disagree that this analytical approach would render meaningless the phrase "physical force against . . . property of another" in the definition of a "crime of violence" in Section 924(c)(3)(A). Other statutes easily could require, categorically, the use of violent, physical force against property of another when the crimes involve the potential risk of pain or injury to persons.[4] For example, one federal arson statute, 18 U.S.C. § 844(i), prohibits the malicious damage or destruction of a building, vehicle, or other real or personal property[5], by means of fire or explosives. *See United States v. Gullett*, 75 F.3d 941, 947 (4th Cir. 1996) (stating the elements of this offense). An additional example, 18

---

[4] This interpretation more precisely constitutes "one consistent definition" of "physical force," as urged by the dissent. Dissent Op. 21. The dissent's view does not rest on the equal treatment of the term "physical force," but instead rests on a singular meaning of "injury," used by the Supreme Court to define "physical force against a person," as encompassing both bodily injury and property damage.

[5] Under Section 844(i), the property must be used in interstate or foreign commerce or an activity affecting such commerce.

U.S.C. § 32(a)(1), prohibits the willful damaging or disabling of an aircraft in flight.[6]  *See United States v. White*, 475 F.2d 1228, 1231 (4th Cir. 1973) (explaining essential elements of the crime).  These statutes are but two examples illustrating the vitality of the force clause language in Section 924(c)(3)(A) involving "property of another."[7]

But identifying such conduct involving physical force against property that could satisfy the requirements of Section 924(c)(3)(A) is not the focus of our inquiry today.[8]  Our job under the categorical approach is to assess whether the least culpable means of committing a felony under Section 1361 qualifies as a predicate "crime of violence" under the language set forth in Section 924(c)(3)(A).  *See Drummond*, 925 F.3d at 689.  And the example of spray-painting rocks on government property easily answers that question in the negative.

---

[6] The statute requires the aircraft to be in the "special aircraft jurisdiction of the United States," meaning an "aircraft in flight," which also includes the time "from the moment all external doors are closed following boarding . . . through the moment when one external door is opened to allow passengers to leave."  18 U.S.C. § 32(a)(1); 49 U.S.C. § 46501(1)(A), (2); *see United States v. McGuire*, 706 F.3d 1333, 1336-38 (11th Cir. 2013) (holding that an offense under 18 U.S.C. § 32(a)(1) qualifies as a crime of violence under Section 924(c)).  This offense can be committed by setting fire to, damaging, destroying, disabling, or wrecking the aircraft.  18 U.S.C. § 32(a)(1).

[7] Contrary to the dissent's view, nothing about our analysis requires "hypothesiz[ing]" whether a predicate offense in the "ordinary case" qualifies as a crime of violence.  Dissent Op. 30.  Instead, our analysis is guided by the Supreme Court's methodology in *Stokeling*, in which the Court directly and readily concluded that robbery under Florida law qualified as a violent felony under the ACCA because of the *potential* of the criminal act to cause "physical pain or injury."  *Stokeling*, 139 S. Ct. at 553 (citation and internal quotation marks omitted).

[8] Notably, Melaku has not argued, and we do not hold, that the definition of a "crime of violence" in Section 924(c)(3)(A) is vague or ambiguous.

Taking a different approach, the dissent attempts to articulate a definition of "physical force" applicable to property offenses, rejecting the reasoning of *Bowen* in favor of language from *United States v. Hill*, 890 F. 3d 51 (2d Cir. 2018). There, the Second Circuit concluded that Hobbs Act robbery in violation of 18 U.S.C. §§ 1951(a), (b)(1), which can be committed by putting a person in "fear of injury" to property, *id.* § 1951(b)(1), qualifies as a crime of violence under Section 924(c)(3)(A). [9] 890 F.3d at 56-57, 60. In reaching this conclusion, the court stated that "physical force" as used in Section 924(c)(3)(A), "means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property." *Id.* at 58.

Because Hobbs Act robbery is a crime involving intimidation of a person, however, the offense is not a pure property crime. *See Mathis*, 932 F.3d at 266; 18 U.S.C. § 1951(b)(1) (stating that Hobbs Act robbery requires a taking "from the person or in the presence of another"). Implicitly recognizing this distinction, the dissent attempts to define "physical force" in the context of a crime limited to property damage, stating that the term "means force that can injure (i.e., damage) the property" and includes crimes that require the actor to intentionally cause injury to that property.[10] Dissent Op. 21. However, this

---

[9] We also have held that Hobbs Act robbery qualifies as a crime of violence under Section 924(c)(3)(A), because robbery by "fear of injury" requires the threatened use of physical force. *Mathis*, 932 F.3d at 265, 266 n.24.

[10] In reaching this conclusion, the dissent relies on language in *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019), in which we stated that an offense "requiring the intentional causation of injury requires the use of physical force" (citation and internal quotation omitted). Dissent Op. 20-22. But in *Battle*, we limited our discussion of "injury" to "bodily injury," without any suggestion that a crime of violence or violent felony (Continued)

broad reading of "physical force" would expand the meaning of the term "crime of violence" in Section 924(c)(3), impermissibly enlarging the scope of criminal conduct proscribed in Section 924(c), without any textual mandate from Congress or a Supreme Court holding requiring this result. *See Davis*, 139 S. Ct. at 2333 (explaining that "a court may not . . . construe a criminal statute to penalize conduct it does not clearly proscribe").

We also disagree with the government's assertion that because the commission of a felony under Section 1361 requires damage in excess of $1,000, it would be difficult to imagine a circumstance in which a person willfully causes damage and has *not* used violent, physical force against the property. As we already have explained, one need only expand on the circumstances in *Carlson* to include the spray-painting of multiple rocks in a national park, or the spray-painting of a particularly precious or valuable rock, that would meet the greater than $1,000 damage amount. The number or value of the rocks affected does not alter the type of force used against those rocks. Moreover, the ability to quantify the cost to repair or restore property does not itself denote whether violent force has been used against property.

In sum, the least culpable felony under Section 1361 effectively constitutes intentional vandalism of government property. Because this conduct does not *require* the use, attempted use, or threatened use of physical force, we hold that a felony offense under Section 1361 does not qualify categorically as a predicate "crime of violence" defined by

---

encompassed *any* intentional "injury to property" causing damage exceeding $1,000. We held that assault with intent to murder under Maryland law qualified as a violent felony under the ACCA force clause. *Battle*, 927 F.3d at 168.

Section 924(c)(3)(A).  Accordingly, we hold that Melaku's conviction under Section 1361 is not a valid predicate offense supporting his Section 924(c) conviction.

### III.

For these reasons, we reverse the district court's judgment denying Melaku's motion filed under Section 2255.  We remand the case to the district court with instructions to vacate Melaku's conviction under Section 924(c) and resentence Melaku on the remaining two charges.

*REVERSED AND REMANDED*
*WITH INSTRUCTIONS*

DIAZ, Circuit Judge, dissenting in part:

This case presents an odd question: what is "violent" force in the context of property crimes? I imagine most people would associate using violent force with crimes against a person. Yet Congress, in establishing criminal penalties under federal law, defined "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." 18 U.S.C. § 924(c)(3)(A) (emphasis added).[1] So our task is to make sense of this vexing concept in the context of Melaku's crime of conviction—willfully injuring government property where the damage exceeds $1,000. *See* 18 U.S.C. § 1361.

I'm sympathetic to the intuitive force of the majority's conclusion. It finds that § 1361 reaches "intentional vandalism" of government property, which can be committed in a nonviolent manner. Majority Op. at 12, 15. So, under the categorical approach,[2] the least-culpable violation of § 1361 isn't a crime of violence—even though it requires proof of more than $1,000 in damage.

But respectfully, this holding ignores § 924(c)'s text and lacks support in a principled rule we can apply consistently in future cases. Because I can't accept a result—no matter how compelling—that turns on judges' impressions of what is "violent," I dissent.

---

[1] We call this the "force clause," distinguishing it from the residual clause in § 924(c)(3)(B). *See United States v. Evans*, 848 F.3d 242, 245 (4th Cir. 2017).

[2] The categorical approach "examines the elements of an offense and the least culpable conduct necessary to sustain a conviction." *Granados v. Garland,* 17 F.4th 475, 479 (4th Cir. 2021).

I.

Yonathan Melaku self-radicalized to oppose American military efforts in Iraq and Afghanistan. Five times between October and November 2010, he fired rounds from a 9mm semiautomatic pistol at government buildings in Northern Virginia. His targets included the National Museum of the Marine Corps, the Pentagon, and Marine Corps and Coast Guard recruiting offices.

In June 2011, Melaku fled from the police as they approached him near Arlington National Cemetery. He dropped a backpack containing spent 9mm shell casings, ziplock bags full of ammonium nitrate, spray paint, work gloves, a headlamp, and a spiral notebook containing Arabic phrases referencing the Taliban, al Qaeda, Osama bin Laden, and jihad. After authorities arrested Melaku, he confessed his plan to use these materials to desecrate servicemembers' graves.

Melaku pleaded guilty to three felonies. Among them were violations of 18 U.S.C. § 1361 for willfully injuring government property and 18 U.S.C. § 1369 for attempting to injure veterans' memorials on U.S. property. He also pleaded guilty to violating 18 U.S.C. § 924(c) for using a firearm during a crime of violence—the § 1361 offense. The district court sentenced Melaku to 120 months' imprisonment for his § 924(c) conviction, to run consecutively to his other sentences.

Following a complicated (but for my purposes, irrelevant) procedural history, Melaku moved to vacate his § 924(c) conviction. He argued that § 1361 isn't a "crime of violence" under § 924(c)'s force clause. The district court disagreed and affirmed

Melaku's conviction. First, the court held that § 1361 is divisible, meaning it sets out two separate crimes: (1) willfully injuring government property, and (2) committing a depredation against government property. Then, applying the modified categorical approach, the court held that willfully injuring government property is a crime of violence because it involves using physical force. [3]

The majority finds that the district court erred in holding that the willful-injury and depredation prongs of § 1361 were divisible. I agree. But we part ways on the second question. I, like the district court, would find that § 1361 is a crime of violence under § 924(c)'s force clause.

## II.

## A.

The heart of my disagreement with the majority is that I maintain we're bound by precedent interpreting "physical force" in § 924(c) and other statutes involving "crime of violence" predicates, like the Armed Career Criminal Act ("ACCA"). *See United States v. Taylor*, 979 F.3d 203, 206 n.2 (4th Cir. 2020) ("Because the definition of 'crime of violence' in § 924(c)(3)(A) is almost identical to the definition of 'violent felony' in [the]

---

[3] When a statute is divisible, we use the modified categorical approach to determine under which of alternative elements a defendant was convicted and then consider only whether that means of committing the offense is categorically violent. In doing so, we may "consult a limited set of record documents (such as the indictment, jury instructions, or plea agreement) for the sole purpose of determining what crime, with what elements, a defendant was convicted of." *United States v. Allred*, 942 F.3d 641, 648 (4th Cir. 2019) (cleaned up). For that reason, the district court only considered whether willfully injuring government property is categorically violent—irrespective of the depredation element.

ACCA[,] our decisions interpreting one definition are persuasive as to the meaning of the other." (cleaned up)).

Some context. A defendant faces enhanced criminal penalties if he uses or carries a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). And again, a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A).

But § 924(c) doesn't define "physical force." So examining its plain meaning, the Supreme Court has held that, as applied to a person, "'physical force' means force capable of causing physical pain or injury." *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (cleaned up); *see also Johnson v. United States*, 559 U.S. 133, 140 (2010) ("[T]he phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."). And we've said that "a crime requiring the intentional causation of injury requires the use of physical force." *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019) (cleaned up); *see also United States v. Runyon*, 994 F.3d 192, 203 (4th Cir. 2021) (same, in a § 924(c) case).

Even though these cases involved "crimes of violence" against people, I'm convinced that their reasoning applies equally to property-crime predicates. The reason is simple. We're tasked with defining "physical force" in § 924(c) generally—not just "physical force against property" as a standalone term of art. The term "physical force" only appears once in the statute, so it must bear only one meaning.

The same is true even if we separate the prepositional phrases in § 924(c), connected by the disjunctive "or," into two clauses.  Under that construction, a crime of violence is one that "has as an element the use . . . of physical force against the person . . . of another *or* one that "has as an element the use . . . of physical force against the . . . property of another."  18 U.S.C. § 924(c)(3)(A).  But we presume "[a] word or phrase . . . bear[s] the same meaning throughout a text."  Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 170 (2012).  So either way we slice it, the term "physical force" must have one consistent definition that makes sense whether the force is employed against a person or against property.

From there, the analysis is straightforward.  If "physical force" against a person "means force capable of causing physical pain or injury," then "physical force" against property means force that can injure (i.e., damage) the property.  And as with crimes against people, "a crime requiring the intentional causation of injury [to property] requires the use of physical force."  *Battle*, 927 F.3d at 166 (cleaned up).

## B.

With these principles in mind, I consider whether Melaku's predicate § 924(c) offense—18 U.S.C. § 1361—is categorically a crime of violence.  Under *Battle*, it is.  Committing a felony under § 1361 requires willfully injuring government property and causing more than $1,000 in damages.[4]  Because the offense "requir[es] the intentional

---

[4] As the majority points out, the statute's divisible misdemeanor—which penalizes the same conduct when it causes less than $1,000 in damages—isn't before us.

causation of injury," it "requires the use of physical force." *Battle*, 927 F.3d at 166 (cleaned up).[5]

That three defendants were once charged with violating § 1361 for spray-painting a rockface on federal land doesn't change my mind. *See United States v. Carlson*, No. 10-CR-00298, 2011 WL 13141452, at *1 (D. Idaho Sept. 15, 2011). True, spray-painting a rock is "nonviolent" in the colloquial sense. But under the statutory definition of "crime of violence," it does require physical force—even if that force isn't conventionally aggressive.

I stress that my reading of the force clause isn't limitless. Rather, it admits the same constraints the Supreme Court has set out for crimes against people. In *Johnson*, the Court held that common law battery isn't a crime of violence because it includes mere offensive touching. 559 U.S. at 138–39. The standard I apply here excludes the analogous intrusion in the property context—trespass. It also exempts property crimes that don't require using physical force or causing damage, like larceny. But any offense that categorically requires using force that can injure property—even by petty means, like spray-painting—involves "physical force" and is a crime of violence under § 924(c).

C.

---

[5] Because I agree with the majority that § 1361 isn't divisible, I must go a step further and decide whether committing a depredation against government property is also categorically violent. For the same reasons I've just discussed, it is. The $1,000 damage element applies to both "willfully injur[ing]" and "commit[ting] any depredation against" government property. 18 U.S.C. § 1361. For that reason, as the majority emphasizes, courts routinely treat "willful injury" and "depredation" as one element—"willfully causing damage to government property." Majority Op. at 6–7.

I'm not alone in this view. The Second Circuit and the D.C. District Court have also read "physical force" against property to mean force that can injure the property. The Tenth Circuit, as the majority highlights, disagrees. But for the reasons I'll discuss, I find that case unpersuasive.

In *United States v. Hill*, the Second Circuit held that Hobbs Act robbery is a crime of violence under § 924(c). 890 F.3d 51, 60 (2d Cir. 2018). The defendant in that case argued that Hobbs Act robbery wasn't categorically violent because it could be "accomplished by means of putting the victim in 'fear of injury' to his person or property . . . through non-forceful means." *Id.* at 57. He offered several hypotheticals, including "threatening to throw paint on the victim's house, to spray paint his car, or, most colorfully, to pour chocolate syrup on his passport." *Id.* (cleaned up). He argued that the "force" involved in each of these hypotheticals would fall short of the *Johnson* standard but still "be sufficient to put a victim in 'fear of injury' to his property" under the Hobbs Act. *Id.*

The *Hill* court disagreed. It said that the defendant's argument "rest[ed] on a flawed reading" of *Johnson*, and, under *Johnson*'s definition, "'physical force' as used in [§ 924(c)] means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property." *Id.* at 58.

To be sure, in reaching this conclusion, the Second Circuit questioned whether *Johnson*'s definition of "physical force" applies to § 924(c)'s force clause, citing two reasons. *Id.* at 58 n.10. Neither sway me.

First, the court noted that its "Circuit ha[d] long defined the meaning of 'physical force' . . . as power, violence, or pressure directed against a person or thing." *Id.* (cleaned

23

up). But we don't use that definition. And we've already applied the *Johnson* line of cases to § 924(c). *See Runyon*, 994 F.3d at 200–04.

Second, the *Hill* court said that *Johnson*'s "holding rejected the possibility that mere 'offensive touching,' sufficient for common-law battery, could constitute a use of physical force in the context of [crimes against people]" but queried "what 'offensive touching' could possibly mean for *property*." *Hill*, 890 F.3d at 58 n.10. I'm not so flummoxed. As I've said, trespass is to property as battery is to people. In fact, the common law tort for offensive contacts was "trespass for battery." *See* Restatement (Second) of Torts § 18 cmt. a (Am. L. Inst. 1965).

The majority tries to distinguish *Hill* on the basis that the predicate offense was Hobbs Act robbery, which "involv[es] intimidation of a person" and "is not a pure property crime." Majority Op. at 14. I'll discuss later why I reject the majority's suggestion that § 924(c) only covers property crimes involving some risk of injury to a *person*. But even accepting that distinction, it's inapposite. The reasoning from *Hill* I find persuasive simply interprets "physical force" against property. The court never cabined its analysis to property crimes that, like Hobbs Act robbery, contemplate a person's presence. And I see no reason to do so.

In another case much like ours, the D.C. District Court held that 18 U.S.C. § 1363— which punishes "willfully and maliciously destroy[ing] or injur[ing]" property "within the special maritime and territorial jurisdiction of the United States"—is a crime of violence under § 924(c). *United States v. Abu Khatallah*, 316 F. Supp. 3d 207, 213 (D.D.C. 2018), *argued*, No. 18-3041 (D.C. Cir. Jan. 11, 2022).

24

The defendant there argued that § 1363 doesn't categorically require *violent* force against property. He cited examples in which the government had used the statute to prosecute conduct he viewed as nonviolent, including breaking a sprinkler head in a prison cell (causing the cell to flood) and pouring tar on the steps of a federal courthouse. *Id.* at 214.

The court disagreed that these examples were nonviolent. It explained, "The relevant question under *Johnson* is not whether the Court would describe all § 1363 convictions as 'violent' in an intuitive sense. Rather, *Johnson*'s definition of physical force simply requires that all of the prohibited acts involve 'force capable of causing physical injury.'" *Id.* at 214–15 (quoting *Johnson*, 559 U.S. at 140). So "[t]arring a courthouse or breaking a sprinkler, while not particularly brutal, each require that level of force against property. Neither act is the sort of *de minimis* intrusion—like a trespassory but otherwise harmless touch—that the Supreme Court in *Johnson* viewed as outside the scope of ACCA's elements clause." *Id.* at 215 (citations omitted). The same is true of spray-painting (or otherwise damaging) government property in violation of § 1361.

Like the Second Circuit in *Hill*, the *Abu Khatallah* court held that "a crime like § 1363—which has as an element the intentional injury of property—categorically requires that the defendant use force capable of causing injury to that property." *Id.*

These courts read § 924(c) better than the Tenth Circuit in *United States v. Bowen*, on which my colleagues rely. The *Bowen* court found that "the mere fact" an offense requires "damag[ing] property [doesn't] mean[] that it requires violent force." 936 F.3d 1091, 1107–08 (10th Cir. 2019) (cleaned up). So witness tampering under 18 U.S.C.

25

§ 1513(b) wasn't a crime of violence because the least-culpable conduct it reached included threatening to spray-paint a witness's car. *See id.* at 1107 (citing *United States v. Edwards*, 321 F. App'x 481, 483 (6th Cir. 2009)).

I find *Bowen*'s analysis wanting. The court asked the right question: "What amount of force against property qualifies as 'violent force?'" *Id.* at 1107 (cleaned up). But it never answered that question. Rather, the court explained only its view of what force *isn't* violent. It said that, unlike the relatively minimal force *Stokeling* considered "violent" for crimes against people, "there is not *inherent violence* in, for example, spray-painting another's car. . . . [S]o the mere fact that [it] damage[s] property cannot make [it a] crime[] of violence under § 924(c)(3)." *Id.* But the Tenth Circuit offered no metric for how other courts might determine what property offenses are "inherently violent."

The *Bowen* court's unspoken answer to its opening question is implied from the gaps in its reasoning: we'll know it when we see it. But for me, that won't do.

In short, well-settled precedent answers the question before us. I would have joined the Second Circuit and D.C. District Court in holding that a property offense is a "crime of violence" under § 924(c)'s force clause if it requires using force that can injure the property.

III.

The majority rejects this approach, contending it "would expand the meaning of the term 'crime of violence' in [§] 924(c)(3), impermissibly enlarging the scope of criminal conduct proscribed in [the statute]." *See* Majority Op. at 15. Not so.

26

To start, I didn't expand the meaning of "crime of violence" as we've historically understood it—Congress did. Congress chose to include property crimes in § 924(c)'s force clause despite omitting them in similar statutes, like the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). I simply recognize, for the first time in our circuit, the universe of offenses Congress included in § 924(c)(3)(A) that courts have only just begun to tackle.

To the same end, the majority suggests my reading fails to give meaning to "Congress's directive that [] qualifying predicate offenses must be 'crime[s] of violence.'" Majority Op. at 11 (quoting 18 U.S.C. § 924(c)(1)(A)). But "crime of violence" is a term of art Congress defined in the statute. So this critique, which seems to draw on the plain meaning of "violence," is beside the point. *See Johnson*, 559 U.S. at 138 (explaining we give a phrase its ordinary meaning only where a statute leaves it undefined). And as I've discussed, courts have repeatedly interpreted Congress's technical definition of "violence"—using "physical force"—in just the way I've proposed here.

Further resisting this outcome, my friends reject § 1361's $1,000 damage threshold as the point where property damage involves violent, physical force. They say that "[t]he amount of damage to property, while defining felonious conduct under [§] 1361, does not necessarily correlate with the type of the force employed." Majority Op. at 11; *see also* Majority Op. at 15.

But this misses the mark. Whether force used in a particular context is "violent" turns not on "the type of the force employed," but on its effect and the defendant's intent.

For instance, in *Stokeling*, the Court held that a robbery statute requiring "force necessary to overcome a victim's resistance" was categorically violent. 139 S. Ct. at 555. Force as minimal as a shove, said the Court, may suffice. *See id.* at 554.

In the same way, Congress defined felony property damage in § 1361 by the amount of damage inflicted. So I think it appropriate to treat that cost threshold as the point where force crosses from *de minimis* to violent, physical force. Just as a light shove might be an offensive touching in one case but violent force if it overcomes a victim's resistance in a robbery, spray-painting government property may or may not involve "physical force" depending on the damage it causes.

Next, my colleagues assert that property crimes "do[] not fit well analytically into the *Johnson* and *Stokeling* templates" because "[c]onduct that can cause bodily injury . . . is materially different in kind from conduct directed only at 'damag[ing] physical possessions.'" Majority Op. at 11 (quoting *Allred*, 942 F.3d at 650). "In fact," they say, "conduct that merely causes damage to the property of another may not pose any danger at all to persons not present when the damage occurs." *Id.*

I've already explained why, in my view, we're bound to follow the *Johnson–Stokeling* framework. Despite the differences in conduct that harms people versus property, Congress chose to group together offenses involving physical force against either. Reasonable minds might disagree with this legislative choice. But that's not our place as judges.

My colleagues do go further than the Tenth Circuit in *Bowen*, attempting to identify features of property offenses that may render them "violent." They say statutes "easily

28

could require, categorically, the use of violent, physical force against property of another when the crimes involve the potential risk of pain or injury to persons."  Majority Op. at 12.  They cite two examples: 18 U.S.C. § 844(i), which prohibits arson, and 18 U.S.C. § 32(a)(1), which prohibits willfully damaging or disabling an in-flight aircraft.  They insist this interpretation "more precisely" fits my view that we must have one consistent definition of "physical force."  Majority Op. at 12 n.4.

My first objection is that § 924(c)'s text doesn't limit the universe of predicate property crimes to those that "involve the potential risk of pain or injury to persons."  But what's more, the majority's definition raises serious vagueness concerns.

My colleagues' focus on whether a property crime risks pain or injury to a person invites into § 924(c)'s force clause the same constitutional infirmity that doomed the residual clause.  *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).  The residual clause defined "crime of violence" as any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  The Supreme Court struck this provision as unconstitutionally vague because "criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined ordinary case."  *Davis*, 139 S. Ct. at 2326 (citing *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) and *Johnson v. United States*, 576 U.S. 591, 606 (2015) (striking identical residual clauses in the Immigration & Nationality Act and ACCA, respectively)).

The majority's definition of crimes involving physical force against property calls for the same inquiry.  It asks that we venture beyond a criminal statute's text and consider

whether a property-damage element "involve[s] the *potential* risk of pain or injury" to a person.  Majority Op. at 12 (emphasis added).  And there's no way to answer that question but to hypothesize the "ordinary case."

The majority's examples illustrate the problem.  Neither the federal arson statute nor the statute punishing the willful damaging or disabling of an in-flight aircraft includes injury to a person as an element.  They are property-damage statutes.  But my colleagues say they'd pass muster under § 924(c)'s force clause because, in the ordinary case, we think of arson and tampering with an in-flight aircraft as involving a substantial degree of risk to people. [6]

Intuitive as that may seem, the Supreme Court has instructed that's a road we must not travel.  Indeed, the Court has cautioned against any reading of the force clause that "effectively replicat[es] the work formerly performed by the residual clause, collapsing the distinction between them, and perhaps inviting similar constitutional questions along the way."  *United States v. Taylor*, --- S. Ct. ----, 2022 WL 2203334, at *7 (June 21, 2022).

Perhaps recognizing that their examples are less than satisfying, my colleagues suggest that we leave the task of "identifying such conduct involving physical force against

---

[6] The majority protests that *Stokeling* supports its approach.  It says the *Stokeling* Court "directly and readily concluded that robbery under Florida law qualified as a violent felony because of the *potential* of the criminal act to cause 'physical pain or injury.'" Majority Op. at 13 n.7 (citing *Stokeling*, 139 S. Ct. at 553).  But the robbery statute in *Stokeling* had an *element* requiring the use of force against a person.  *See Stokeling*, 139 S. Ct. at 548.  In contrast, the majority asks us to hypothesize the degree of risk to a *person* associated with force against *property*—an answer we can't find in the text of the arson and damage-to-aircraft statutes or other pure property crimes like them.  On this issue, *Stokeling* is simply of no moment.

property that could satisfy the requirements of [§ 924(c)'s force clause]" for another day. *See* Majority Op. at 13. But failing to articulate a principled standard that supports the majority's outcome *also* risks opening the force clause to vagueness challenges. *See Johnson*, 576 U.S. at 598 ("[T]he failure of persistent efforts to establish a standard can provide evidence of vagueness. . . . [T]his Court's repeated attempts and repeated failures to craft a principled and objective standard out of the [ACCA's] residual clause confirm its hopeless indeterminacy." (cleaned up)).

I decline to inject such constitutional doubt into the force clause where there's a principled alternative.

IV.

To summarize: my view is that a property crime may serve as a "crime of violence" predicate to a § 924(c) conviction if it requires intentionally injuring another's property or using force that can cause injury. I would therefore affirm the district court and sustain Melaku's conviction.

Admittedly, this rule—which may reach what the majority calls "intentional vandalism of government property"—isn't intuitively satisfying. Majority Op. at 15. And I pity the unwitting graffiti artist who (while brandishing a firearm) vandalizes the rock equivalent of the Hope Diamond. But our criminal justice system depends on principled rules and respect for legislative choices, even if they sometimes lead to unusual outcomes.

I respectfully dissent.